**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **ELLIS CROSBY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:24-cv-21-CWB |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction and Administrative Proceedings**

Ellis Crosby ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on August 18, 2021—alleging disability due to seizures, Parkinson's Disease, and human immunodeficiency virus. (Tr. 17, 74, 81, 90).[1, 2] The claim was denied at the initial level on September 28, 2021 and again after reconsideration on July 22, 2022. (Tr. 17, 92, 99). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 17, 101, 104). The ALJ subsequently heard the case on April 26, 2023 (Tr. 17, 35-73), at which time testimony was given by Plaintiff (Tr. 43-67) and by a vocational expert (Tr. 67-71). The ALJ took the matter under advisement and issued a written decision on July 10, 2023 that found Plaintiff not disabled. (Tr. 17-29).

---

[1]  References to pages in the transcript are denoted by the abbreviation "Tr."

[2]  Although Plaintiff initially alleged a disability onset date of September 14, 2020 (Tr. 17, 74, 81-82), this appeal requires a showing of disability between the date of the August 18, 2021 application and the ALJ's July 10, 2023 decision. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.") (citation omitted).

1

The ALJ's written decision contained the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since August 18, 2021, the application date, and the amended onset date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: seizures, Parkinson's disease, human immunodeficiency virus (HIV), hypertension, and neck/back injury (per testimony) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except the claimant can occasionally push and pull with the bilateral upper and lower extremities.  The claimant can occasionally stoop, kneel, and crouch.  The claimant can never climb ladders, ropes, and scaffolds.  The claimant must avoid concentrated exposure to extreme cold, heat, wetness, and humidity.  The claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gas.  The claimant should avoid all exposure to hazardous conditions such as unprotected heights, dangerous machinery, and uneven surfaces.  The claimant would be restricted to jobs with no more than simple, short instructions and simple work-related decisions with few workplace changes.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 20, 1991, and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since August 18, 2021, the date the application was filed and the amended onset date of disability (20 CFR 416.920(g)).

(Tr. 20, 23, 27, 28).  On November 14, 2023, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and remand the case for a new hearing and further consideration.  (Doc. 8 at p. 8).  The court finds the case to be ripe for review pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3); specifically, the court construes Plaintiff's supporting brief (Doc. 8) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 11) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[3]

## II.   Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings,

---

[3] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 6 & 7).

3

[a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]  To make such a determination, the ALJ employs a five-step sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* 20 C.F.R. §§ 404.1520 & 416.920.[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see*

---

[5] "[T]he law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits." *Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986). Therefore, cases arising under Title II are appropriately cited as authority in Title XVI cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."); *Claudia S. v. Saul*, No. 1:18-CV-01896, 2019 WL 3059745, *1 (N.D. Ga. July 12, 2019) ("[T]o the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.").

20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

**III.     Issue on Appeal**

Plaintiff raises one issue on appeal: whether the ALJ erred in failing to order a consultative examination.  (Doc. 8 at p. 2).

**IV.     Discussion**

Plaintiff asserts that the ALJ erred in failing to order an additional consultative medical examination.  (Doc. 8 at pp. 7-8).  Specifically, Plaintiff argues that the ALJ should not have relied upon an earlier consultative medical examination because it was conducted before Plaintiff fractured his neck and therefore did not provide sufficient information for the ALJ to appropriately determine the nature and extent of the limitations caused by his neck/back impairment.  (*Id*. at p. 8).  The Commissioner in turn contends that Plaintiff failed to show any evidentiary gaps in the record or that he suffered any prejudice.  (Doc. 11 at p. 4).

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  *Graham*, 129 F.3d at 1422.  "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative

6

examination when such an examination is necessary to make an informed decision." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, *2 (M.D. Fla. Jan. 28, 2021); 20 C.F.R. § 416.912(b)(1)-(2).

The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted). However, "[t]here must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955, *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL 289052 at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, *2 (11th Cir. June 1, 2022).

As to Plaintiff's argument that the ALJ failed to develop the record by not obtaining a consultative medical examination, the ALJ was under no duty to do so. An ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("The ALJ 'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'") (citation omitted). The "[o]rdering [of] a consultative examination

7

is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citation omitted); 20 C.F.R § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

Here, the record reflects that the ALJ properly considered evidence from the relevant period in determining that Plaintiff was not disabled and even found Plaintiff's neck/back injury to be a severe impairment at step two of the sequential evaluation process. (Tr. 20). The ALJ considered testimony in which Plaintiff included his neck/back injury as an impairment in addition to the seizure disorder, Parkinson's disease, and HIV as were alleged in his disability report. (Tr. 23, 43, 45-46, 251). The ALJ stated that Plaintiff indicated he received medical treatment and took both prescribed and over-the-counter medications for symptoms associated with his impairments. (Tr. 23, 43-46, 65-66). And the ALJ noted that Plaintiff reported he had been limited in lifting (20 pounds), pushing, pulling, standing (1 hour with a 5 to 10-minute break), walking (30 minutes before needing a break), bending/crouching, climbing, talking, and using his hands, and that his impairments had not substantially improved with treatment. (Tr. 24).

In addition, the ALJ considered the March 5, 2021 physical consultative examination by Chima Ukachi, M.D. that was conducted prior to the protective filing date and the occurrence of Plaintiff's cervical fracture. (Tr. 24). The physical consultative examination showed, among other things, that Plaintiff had a normal gait and used no assistive device for ambulation, that he displayed having a negative straight leg raise bilaterally and the ability to lie straight on his back, that he demonstrated the ability to dress and undress himself, get up and out of a chair, and get on

and off the examination table, that he walked on his heels and toes and squatted fully, that he had negative Tinel's sign and Phalen's test, that he had palpable radial and pedal pulses of the bilateral lower extremities with no peripheral edema, that he displayed having five-out-of-five muscle strength of the upper and lower extremities and a five-out-of-five grip strength ability, that he exemplified having full range of motion of the cervical spine/neck, shoulders, wrists, elbows, lumbar spine, hips, knees, and ankles, and that he maintained normal sensory and normal deep tendon reflexes.  (Tr. 24, 500-01).  The ALJ further observed that in August 2021 Plaintiff required hospitalization for his seizure disorder and cervical fracture with displacement at C2 but noted that the computed tomography angiography showed only a minimally displaced fracture at C2 and that Plaintiff left the hospital against medical advice.  (Tr. 25, 678, 680, 809).

The ALJ also considered medical treatment records from Unity Wellness and East Alabama Medical Center.  (Tr. 25).  Objective clinical findings from April 2022 and March 2023 indicated that Plaintiff denied having numbness or tingling of the extremities, that he had no back pain, no weakness, and no joint pain, that he demonstrated having normal range of motion and no cyanosis or clubbing of the musculoskeletal system, and that he had intact sensation, movement in all extremities, and normal deep tendon reflexes.  (Tr. 25, 820, 875).  Similarly, the ALJ cited treatment records from an August 1, 2022 hospital visit that revealed Plaintiff had normal musculoskeletal and neurological findings and denied neck and back pain.  (Tr. 25-26, 851).  The ALJ likewise cited December 2022 treatment records from Dr. Michael Hamer observing that Plaintiff had a normal gait, normal muscle bulk and tone, normal sensation, and normal five-out-of-five strength.  (Tr. 26, 873).

Additionally, the ALJ found persuasive the prior administrative medical findings of the State agency consultants who considered Plaintiff's cervical fracture in reaching their conclusions

that Plaintiff was not disabled. (Tr. 26, 74-79, 82-87). The ALJ specifically noted that those administrative medical findings supported the clinical and radiological findings, which showed no significant declines that would preclude all work before and during the relevant period. (Tr. 26). Referencing Plaintiff's medical records from August 2021, the State agency consultants noted that Plaintiff stated he had no plans to return for follow up examination after suffering his cervical fracture because his neck felt fine with no limitations. (Tr. 78, 86-87). The State agency consultants both concluded, after considering Plaintiff's medical records from March 2021 through August 2021 at the initial level and through May 25, 2022 at the reconsideration level, that Plaintiff at a minimum could perform light work.[6] (Tr. 26, 74-76, 79, 84-86, 88). The ALJ also noted that Plaintiff's statements in his Function Report and at the hearing, which had been made after his neck injury, were consistent with the prior administrative findings. (Tr. 26). Plaintiff reported that he had no problems with his personal care and that he cooked, cleaned, drove a car, shopped in stores, exercised on a treadmill and with ten and fifteen-pound weights, and worked part-time caring for his fiancé's parents. (Tr. 26, 47-48, 274-75, 326).

Plaintiff does not cite to any treatment records that show significant limitations stemming from his August 2021 cervical fracture or to any doctors who recommended the need for an additional consultative examination. Nor does Plaintiff identify what would have been discovered through a second consultative examination or how it would have supported his claim. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Moreover, Plaintiff's counsel did not request an additional consultative examination at the hearing. (Tr. 41-

---

[6] "Light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

42, 72). Because the record as a whole contained sufficient evidence for the ALJ to evaluate Plaintiff's impairments and functional ability—with no evidentiary gaps leading to unfairness or clear prejudice—an additional consultative examination simply was not necessary. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) ("The administrative law judge was not required to order an additional medical examination to develop a full and fair record. ... Sarria fails to identify any gaps in the evidence. Sarria was represented during the administrative process and was responsible for producing evidence related to her disability. ... Sarria's medical records, the reports of her treating psychiatrists and therapists, the assessments of agency physicians, and Sarria's self-assessments provided sufficient evidence for the administrative law judge to determine whether Sarria's depression was disabling.") (citations omitted); *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir.2007) (holding that where "no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination ..., the ALJ need not order an additional consultative examination"); *Osborn v. Barnhart*, 194 F. App'x 654, 668-69 (11th Cir. 2006) (finding that the ALJ did not err by failing to obtain other medical records or recontacting the plaintiff's treating physician for clarification and noting, among other things, that the plaintiff had the burden of producing evidence in support of his claim and that he was represented by counsel, who neither requested a clarification nor objected that the medical records were inadequate); *Fleeton v. O'Malley*, No. 2:23-CV-62, 2024 WL 235216, *5 (M.D. Ala. Jan. 22, 2024) (finding that the plaintiff failed to show that any unfairness or clear prejudice resulted from the lack of a second consultative examination where he did not identify any inconsistencies in the record that would necessitate a second consultative examination or identify any evidentiary gaps, he did not show that his condition worsened after the lone consultative examination occurred or that he developed a new impairment or new

limitations necessitating another consultative examination, and he did not identify what facts would have been discovered in a second consultative examination that would have supported his disability claim). "Mere speculation that an additional examination might have changed the results is not sufficient to show prejudice." *Boisvert v. Comm'r of Soc. Sec.*, No. 2:21-CV-35, 2022 WL 4093065, *6 (M.D. Fla. Sept. 7, 2022); *see also Schrimpsher v. Kijikazi*, No. 4:21-CV-472, 2022 WL 16924102, *3 (N.D. Ala. Nov. 14, 2022) ("[Plaintiff] hasn't pointed to any evidentiary gaps in the record, and he was represented during the administrative process, so he had a duty to produce evidence related to his disability. Plus, [Plaintiff] can only speculate that a consultative exam ... would provide evidence that supported his claim of disability. Speculation isn't a basis for an ALJ to order a consultative exam.") (internal citation omitted); *Kever v. O'Malley*, No. 2:23-CV-626, 2024 WL 2239738, *3 (M.D. Ala. May 17, 2024) ("It is [the plaintiff's] burden to show that she is disabled, and her mere speculation that a consultative examination would have shown that she is more limited than her RFC is not sufficient to remand her disability application to the Commissioner."); *Davis v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-000346, 2021 WL 3887467, *6 (N.D. Ala. Aug. 31, 2021) ("Hope or speculation is not a basis for ordering a consultative examination.").

In short, Plaintiff has failed to demonstrate unfairness or clear prejudiced from the lack of an additional consultative examination. *See Slocumb v. Comm'r of Soc. Sec.*, No. 5:16-CV-617, 2017 WL 2889804, *4 (M.D. Fla. May 15, 2017) ("[T]he only purported prejudice that Plaintiff points to in her brief is the lack of a consultative psychological examination ...—but it is Plaintiff's duty to show *how* the ALJ's failure to obtain a psychological examination prejudiced her, the mere lack of a consultative examination is inadequate to meet Plaintiff's burden when the record contains sufficient evidence to determine whether she is disabled.") (emphasis in original); *Gentle*

*v. Kijakazi*, No. 8:21-CV-2900, 2023 WL 2446609, *4 (M.D. Fla. Mar. 10, 2023) ("[T]he mere lack of a consultative examination is inadequate to meet a plaintiff's burden to demonstrate prejudice. ... Rather, a plaintiff must show the ALJ's decision would have been impacted by a consultative examination.") (citing *Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) and *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010)).  Accordingly, when considering the record as a whole, the court finds that the ALJ did not err in developing the record and that the ALJ's disability determination was supported by substantial evidence.

**V.     Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 8) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 11) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 27th day of September 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**